# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN H. HALL, <br><br> Plaintiff, <br><br> v. <br><br> KEVIN MCALEENAN, Acting Secretary, Department of Homeland Security, <br><br> Defendant. | Civil Action No. 19-1013 (JEB) |

## MEMORANDUM OPINION

*Pro se* Plaintiff Steven H. Hall has filed a litany of lawsuits related to his employment with, and 2013 termination from, the Department of Homeland Security, as well as the 2015 settlement agreement concluding those affairs. In fact, a few months ago, this Court issued a Memorandum Opinion and separate Order enjoining him from filing future suits regarding, *inter alia*, his termination from DHS without prior leave of this Court. Hall v. McAleenan, No. 18-461, ECF Nos. 60-61. The current case does not fall within such proscription because it was filed before the injunction issued. The Complaint here nonetheless illustrates the necessity of the injunction, as it essentially repeats many of the same facts regarding his tenure and firing, although it admittedly adds a few other incidents that may have occurred after the settlement agreement. The Government now moves to dismiss, citing judicial estoppel, the settlement agreement, and claim preclusion. Believing this suit no more meritorious than the others, the Court will grant the Motion.

1

I.      **Background**

As was the case in many of his prior pleadings, Hall favors a scattershot approach that jumbles myriad facts relating to various purported claims in one document and then adds multiple exhibits or appendices containing different facts and claims. See ECF No. 1 (Complaint) & Exhs. J (Chronological Facts), K (Legal Standards), L (Legal Basis for Compensatory and Liquidated Damages). As best the Court can discern – and based in part on prior Opinions in his other cases – Hall worked at DHS from August 2010 to November 2013. See Compl. at 4. After complaints about his behavior surfaced,

> DHS placed Hall on administrative leave in 2013. See ECF No. 12 (Am. Compl.), Exh. N (Facts) at 3. The agency then indefinitely suspended and eventually terminated him. Id. at 5. Believing that his firing was the result of retaliation and discrimination, Hall filed several complaints with the Equal Employment Opportunity Commission and the Merit Systems Protection Board. Id. at 5. He hired [attorney Rosemary] Dettling to represent him in these matters. Id. Although Hall settled with DHS during the administrative process, he believes he was given a poor deal. See, e.g., ECF No. 28 (Pl. Opp.) at 13–15. His dissatisfaction with both the underlying agreement and his representation in the matter has spurred the flurry of lawsuits that he has filed against both DHS and Dettling.

Hall v. Nielsen, No. 18-461, 2019 WL 1116911, at *1 (D.D.C. March 11, 2019).

In the current suit, his specific causes of action are best understood as being set forth in Exhibit K to the Complaint, titled "Legal Standards." Indeed, the Complaint explains that "Plaintiff's stated claims are listed in Ex. K." Compl. at 12. That document spells out twelve separate allegations, many relating to discrimination and defamation in 2013, some concerning the 2015 settlement agreement, and others citing subsequent mistreatment, particularly DHS's placement of Hall on a Do Not Admit (DNA) List. The Government, not surprisingly, moves to dismiss.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). The Court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Even at the Rule 12(b)(6) stage, a court can review "documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted); see also Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment.").

**III. Analysis**

In seeking dismissal here, although the Government has many weapons at its disposal, its Motion focuses on two: claim/issue preclusion (in two forms) and judicial estoppel. The Court will analyze them in turn.

    A. Claim/Issue Preclusion re: Settlement Agreement

At least two of Hall's causes of action attack the settlement agreement itself. Despite walking away with $55,000, he believes himself ill used. Specifically, "Plaintiff states a claim pertaining to an illegal settlement breach term agreement (SBTA) from November 21, 2015," Legal Standards at 2 (Claim 7), and "Plaintiff states a claim pertaining to the settlement agreement from November 23, 2015." Id. (Claim 10). Yet, this Court has previously concluded that the agreement is valid and was not procured by any improper means. In a recent Opinion, it explained again that claims relating to the agreement had already been rejected: "[B]ecause the validity of the settlement has been established [in prior litigation], any stand-alone counts Plaintiff alleges relating to that contract – *e.g.*, misrepresentation, duress, and fraud – also fail." Hall v. Nielsen, No. 18-461 2019 WL 250972, at *5 (D.D.C. Jan. 17, 2019) (internal citation omitted).

Whether the Court more appropriately describes the bar here as issue preclusion – *i.e.*, the validity of the settlement agreement – or claim preclusion – *i.e.*, causes of action attacking the settlement agreement – it has undoubtedly issued prior rulings on the agreement that prohibit the claims Hall raises here.

    B. Issue Preclusion re: Termination

The majority of Plaintiff's allegations relate to actions that DHS and its employees took in connection with his employment and termination in 2013. He believes that the agency

4

discriminated against him on the basis of sex and disability, retaliated against him, and libeled him, all in or around 2013. See Legal Standards at 1-2 (Claims 4-6, 8, 11-12). In moving to dismiss, the Government maintains that the 2015 settlement agreement operates as a bar because its language "expressly resolv[es] all claims, issues, and causes of action raised or which could have been raised between [Hall] and [DHS] up to the date of the Agreement." MTD at 8 (quoting Hall, 2019 WL 250972, at *4 (quoting Agreement)) (internal quotations omitted; alterations in Hall).

It is arguable that contentions relying on the settlement agreement would be more proper on a motion for summary judgment than on a motion to dismiss, where Plaintiff's allegations must be treated as factually true. Yet, Defendant's position here could better be characterized as relying on issue preclusion inasmuch as it points out that "[t]he Court has previously found that Plaintiff signed a Settlement Agreement on November 23, 2015," which bars any employment claims that arose prior to that date. See MTD at 8. This is correct.

As this Court concluded:

> With one exception [a workers'-compensation claim, over which the Court did not have jurisdiction], the settlement agreement unquestionably encompasses Hall's employment-related claims. By its terms, that document "resolv[es] all claims, issues, and causes of action raised or which could have been raised between [Hall] and [DHS] up to the date of th[e] Agreement." Settlement Agreement at 1. As the settlement is dated November 23, 2015, and Plaintiff's employment-related claims all arose before then, they are barred by the settlement. In case there were any doubt, the agreement goes into more depth about the claims that are covered, listing several MSPB appeals, Equal Employment Opportunity complaints, and Federal Tort Claims Act claims that Hall agreed to "withdraw, release, or waive, with prejudice." Id. at 2. The listed administrative proceedings addressed the same claims Hall brings here, including those for discrimination and reasonable accommodation. See MTD at 8–13. And, even if Hall now advances claims not specifically listed, they would still be barred by the settlement. See Settlement Agreement at 2 (Appellant agrees "[t]o withdraw . . . all formal and

> informal EEO claims . . . as of the date of the signing of this Agreement, including, but not limited to [list of claims.]") (emphasis added).

Hall, 2019 WL 250972, at *4. None of Hall's current employment-related claims thus survives.

    C.  Judicial Estoppel/Failure to State Claim

The Court concedes that a number of Plaintiff's allegations post-date the 2015 settlement agreement and thus could not have been contemplated by its terms. The principal one is the agency's alleged discrimination "by recycling Plaintiff's name back on the DNA List on January 9, 2017." Legal Standards at 1 (Claim 1); see id. (Claim 2). He also alleges that "from May 2013 to October 2018[, the a]gency continuously failed or refused to adequately engage with Plaintiff regarding unfavorable treatment; EEO activity and retaliation." Id. (Claim 3). In addition, there is a reference to his "tentative job offer being rescinded on October 28, 2017," id. (Claim 1), and an unspecified allegation of "collusion that included collaboration and ex parte communication between Agency attorneys and EEOC AJ's from June 2018 to October 2018." Id. at 2 (Claim 9).

Defendant correctly points out that most of these claims are barred by the doctrine of judicial estoppel, which courts may invoke "where a party assumes a certain position in a legal proceeding, . . . succeeds in maintaining that position, . . . [and then,] simply because his interests have changed, assume[s] a contrary position." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Because "judicial acceptance of an inconsistent position in a later proceeding creates the perception that either the first or the second court was misled," doing so "pos[es] a threat to judicial integrity." Moses v. Howard Univ. Hosp., 606 F.3d 789, 792 (D.C. Cir. 2010) (alterations and internal quotation marks omitted).

6

The D.C. Circuit has instructed that "[t]here are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?" Id. at 798.

Here, Hall checks all three boxes. First, he filed a bankruptcy petition in the Bankruptcy Court for the District of Maryland on December 17, 2017, and therein averred that he had no "legal or equitable interest" in any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." MTD, Exh. 1 (Bankruptcy Filings) at 14. Yet, he now alleges certain claims that were extant at the time he filed. Second, his bankruptcy was confirmed, which may not have happened had he listed such claims. Third, he would derive the unfair advantage that any amount he looks to recover here would properly be due his creditors, who have now been discharged.

As the D.C. Circuit has explained, "The federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." Robinson v. Dist. of Columbia, 10 F. Supp. 3d 181, 185 (D.D.C. 2014) (internal quotation marks and citation omitted). And this holding applies to employment-discrimination claims. Davis v. Dist. of Columbia, 925 F.3d 1240, 1255-57 (D.C. Cir. 2019).

Hall rejoins that he "was not aware to inform his creditors and the bankruptcy trustee of his employment disputes and court lawsuits." ECF No. 25 (Opp.) at 1. Yet not only did he have

7

counsel in his bankruptcy proceedings, but he also filed a pleading in one of his employment suits a mere five days before he submitted his bankruptcy petition. See Hall v. Nielsen, No. 18-1283, ECF No. 14 (Response). Given this chronology – as well as the fact that Hall was engaged in prosecuting multiple suits that he had initiated during this period – the Court cannot readily believe that he was somehow unaware of his other claims. See Davis, 925 F.3d at 1255 ("[A] debtor is under a duty both to disclose the existence of pending lawsuits when he files a petition in bankruptcy and to amend his petition if circumstances change during the course of the bankruptcy.") (citation and internal quotation omitted).

Hall might alternatively respond that some of his grievances extend past December 17, 2017, see Legal Standards at 1-2 (Claims 3 & 9), and thus need not have been listed on his bankruptcy petition. There are two problems with such a position. First, Claim 3 refers to an allegedly continuing event (May 2013 to October 2018), so Plaintiff would have clearly known about it in December 2017. Second, although Claim 9 takes place entirely in 2018, it is too vague and confusing to constitute a viable cause of action under Rule 12(b)(6). It speaks of "collusion that included collaboration and ex parte communication between Agency attorneys and EEOC AJ's from June 2018 to October 2018." Id. at 2. Yet Hall had no legal claim alive in 2018, so perhaps this refers to his administrative proceedings that preceded the 2015 settlement agreement. In any event, it is too opaque to survive dismissal here.

Indeed, some of the other claims, even if not barred by judicial estoppel, would be dismissed for failure to state a claim. For example, if Hall was no longer a DHS employee in 2017, how was he harmed by being placed on a DNA List at a DHS facility? Similarly, his allegation that DHS did not sufficiently engage with him regarding EEO activity, although alleged to have lasted through 2018, plainly relates to his employment and settlement. Finally,

we know nothing else about a purported "tentative job offer" in 2017. These dubious allegations thus do not clear the Rule 12(b)(6) bar.

**IV.     Conclusion**

The Court, accordingly, will issue a contemporaneous Order dismissing this action.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  October 3, 2019